IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-1016- RPM

MICHAEL L. ZINNA

      Plaintiff,

v.

JAMES CONGROVE, in his individual capacity.

      Defendant.

---

## JAMES CONGROVE'S TRIAL BRIEF

---

James Congrove's Trial Brief identifies and discusses six evidentiary, legal, and jury instruction issues that will arise during trial.   Given the Court's intimate familiarity with the factual disputes in this case, Mr. Congrove is not providing a factual overview in this Trial Brief.

## I.  EVIDENTIARY ISSUES

### A.  Hearsay Statements of Dave Auburn.

Plaintiff intends to introduce out of court declarations of Dave Auburn, declarations Plaintiff concedes constitute hearsay under F.R.E. 801. The Court should preclude these hearsay statements because they are inadmissible under F.R.E. 802 and do not fall within a recognized exception to the hearsay rule.

Dave Auburn served as a Jefferson County Commissioner from March 2005 through January 2007 and was originally a named defendant in this lawsuit.  Plaintiff elected not to depose Mr.

Auburn in this case, choosing instead to depose Mr. Auburn in his other federal lawsuit, *Zinna v. Cook, et al* (06-CV-1733-CMA-CBS).   When Plaintiff deposed Mr. Auburn on February 22, 2008, Mr. Congrove was not a party to the *Cook* case, was not served with a notice of the deposition, and was not aware the deposition was taking place.  A year later, on February 11, 2009, Mr. Auburn died.

The only party who attended Mr. Auburn's deposition was Plaintiff.   Mr. Auburn claimed that Mr. Congrove suggested to him that someone should create a website about Plaintiff and post his criminal records there.  Plaintiff intends to introduce Mr. Auburn's hearsay statements to prove that Mr. Congrove is responsible for creating ColoradoWackoExposed and posting Mr. Zinna's criminal records on that website.  Mr. Auburn' statements are offered for their truth and thus are hearsay under F.R.E. 801(c).

Because hearsay statements inherently lack guarantees of trustworthiness and reliability, F.R.E. 802 precludes their introduction unless they fall within a specific exception to the hearsay rule. Each hearsay exception in the Federal Rules of Evidence contains specific foundational requirements to ensure the evidence offered has sufficient guarantees of trustworthiness and reliability.

The hearsay exception under the Federal Rules of Evidence specifically tailored for former testimony is Rule 804(b)(1).  That rule permits the introduction of former testimony by a witness at a deposition in the same or different proceeding if (a) the declarant is unavailable and (b) the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  The unavailability requirement evidences the strong preference for live testimony, so

2

the party against whom the evidence is offered may test the strength of the witness's memory, explore the basis of his observations and opinions, and challenge the witness's credibility.  Even where a witness is unavailable, Rule 804(b)(1) insists that former testimony not be admitted unless the party against whom the evidence is offered, or someone with very similar interest, had a chance to develop, challenge, and test the testimony of that witness.  Here, Plaintiff cannot satisfy the second requirement of Rule 804(b)(1) and thus Mr. Auburn's testimony is inadmissible under Rule 804(b)(1).

Nor are Mr. Auburn's hearsay statements admissible under Rule 807.  The residual exception to the hearsay rule is to be used "very rarely and only in exceptional circumstances." *United States v. Trujillo*, 136 F.3d 1388, 1395-96 (10th Cir. 1998); *United States v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002)(cautioning that "the rule should be used only in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interests of justice." (citations and internal quotations omitted)).  Rule 807 contains four foundational requirements.  Because Plaintiff is unable to satisfy the first foundational requirement, a detailed discussion of the remaining three foundational requirements is unnecessary.

The first requirement of Rule 807 mandates that the hearsay statements must have "circumstantial guarantees of trustworthiness" equivalent to those found in Rule 803 or 804.  No circumstantial guarantees of trustworthiness equivalent to those found in Rule 804(b)(1) exist here.  The mere giving of an oath does not constitute a circumstantial guarantee of trustworthiness.  *United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir. 1989)(giving an oath insufficient in itself to ensure trustworthiness; otherwise Congress could have dispensed with cross examination requirement of

3

Rule 804(b)(1)).  Mr. Auburn's hearsay statements are no different than those that might be found

in a declaration, affidavit, or *ex parte* interview.   This is particularly true given that the only person

who had an opportunity to develop Mr. Auburn's deposition testimony was Plaintiff, the person

seeking to introduce Mr. Auburn's hearsay statements.   The guarantee of trustworthiness—cross-

examination by an opposing party—is noticeably absent here.

More to the point, Plaintiff's own pleadings demonstrate that Mr. Auburn's former testimony

is inherently *unreliable*. In Plaintiff's Response [Dkt. # 280] to the Motion for Protective Order from

Non-Party Board of County Commissioners of Jefferson County  [Dkt. # 277], Plaintiff advised the

Court that "cookies" from a computer used by Commissioner Auburn reflect visits to the

ColoradoWackoExposed website.  *Response at p.11.*  But noted Plaintiff:

> This evidence is actually in conflict with Commissioner Auburn's prior testimony
> during his deposition, where he indicated that he personally had never visited the
> ColoradoWackoExposed website, (*see* Auburn Dep., at 30) . . ..

*Id.*  Thus, not only was Mr. Auburn's former testimony not subject to cross-examination, but forensic

computer records establish that his hearsay statements were untrue.

Put simply, Mr. Auburn's hearsay statements lack equivalent circumstantial guarantees of

trustworthiness to permit their introduction under Rule 807. *United States v. Fernandez*, 892 F.2d

at 981.  And even if equivalent guarantees of trustworthiness were present, Plaintiff must further

establish that (a) Mr. Auburn's former testimony is offered as evidence of a material fact; (b) Mr.

Auburn's former testimony is more probative on the point for which it is offered than any other

evidence which the proponent can procure through reasonable efforts; and (c) the general purposes

of the rules of evidence and the interests of justice will be served by the admission of the statements

4

into evidence.  Mr. Congrove will address these additional requirements should it become necessary, but simply notes that this problem, to the extent it is one, is one of Plaintiff's own making.

On February 28, 2008, the Court ruled [Dkt #211] that Plaintiff was entitled to pursue the allegations set forth in his First Supplement to the Third Amended Complaint.  On August 14, 2008, the Court entered its Supplemental Discovery Scheduling Order [Dkt.# 221] authorizing each party to take up to six additional depositions, and extending the discovery deadline to December 31, 2008, a deadline that was later extended to January 31, 2009.   At any point during these eleven months Plaintiff could have noticed the deposition of Mr. Auburn; he elected not to do so.  Admitting former testimony that is inadmissible under Rule 804(b)(1) is inconsistent with the general purposes of the rules of evidence.  And permitting a party to use an *ex parte* deposition taken in another case taken three months after Plaintiff's current counsel entered his appearance in this case, and nearly a year before the discovery deadline in this case lapsed, is inconsistent with the interests of justice.

### B. The F.E.D. Action.

On May 29, 2009, the Court granted [Dkt.# 273] Mr. Congrove's Motion in Limine [Dkt. #263 ] to preclude Plaintiff from presenting evidence and argument to recover damages allegedly suffered as a result of (a) the F.E.D. Action filed by the Jefferson County Board of County Commissioners against Ralph and Carmella Aiello Properties, LLC; and (b) Mr. Congrove's alleged "unilateral cancellation" of a claimed lease agreement between Jefferson County and BJC Development Corporation, granting BJC rights to develop property at the Jefferson County airport.

Despite the Court's ruling, Plaintiff still intends to present evidence and argument that Mr. Congrove improperly caused the Jefferson County Attorney to file the F.E.D. Action.  Mr. Congrove respectfully requests that the Court address this issue before trial, because the trial will be considerably longer if detailed evidence concerning the F.E.D. Action is required.

Plaintiff should not be permitted to introduce evidence concerning the F.E.D. Action for the following reasons.  First, although the F.E.D. Action (filed October 24, 2006) post-dates the filing of the Third Amended Complaint, it pre-dates by more than a year Plaintiff's November 24, 2007 request to file a First Supplement to the Third Amended Complaint [Dkt. # 190]. Plaintiff's operative pleadings make no allegations concerning the F.E.D. Action and it should not be considered part of this lawsuit.

Second, the Jefferson County Attorney filed the F.E.D. Action not against Mr. Zinna, but against its Lessee, Ralph and Carmella Aiello Properties, LLC.  Plaintiff was never a party to the F.E.D. Action, nor was he a party in the foreclosure action filed by U.S. Bank.   *See, generally, Motion in Limine* at pp. 11-14.

Third, the F.E.D. Action was not filed by Mr. Congrove, nor was the F.E.D. Action filed on his behalf.  Rather, the Jefferson County Attorney's Office filed the F.E.D. Action on behalf of the Jefferson County Board of County Commissioners.   Stephanie Copeland, the Assistant County Attorney who drafted and filed the F.E.D. complaint, recently testified in the *Zinna v. Cook* matter that she had absolutely no discussions with Mr. Congrove about whether to file the F.E.D. Action

or about Mr. Zinna.[1] Testimony about the underpinnings of the F.E.D. Action will confuse the jury about conduct engaged in by Jefferson County, by and through its County Attorney, on the one hand, and the alleged wrongdoing by Mr. Congrove in his individual capacity on the other.

Fourth, the irrelevant sideshow that is the F.E.D. Action will considerably lengthen this trial and result in jury confusion.  Instead of focusing on evidence relevant to Plaintiff's claims against Mr. Congrove, in his individual capacity (e.g., evidence concerning surveillance, denial of access to public events, etc.), the jury will be forced to wade through the confusing quagmire of default provisions under deeds of trust, the procedural aspects of foreclosure proceedings, and the complicated interplay of ground leases, HOA covenants, and federal use regulations. Explaining these matters could easily require the testimony of seven witnesses and the admission of more than a dozen documents.  This is not to say that evidence concerning Mr. Cinquanta's activities are not relevant.  Whether Mr. Cinquanta's surveillance was related to the F.E.D. Action, at whose direction he acted, and the scope of his activities are certainly fair game at trial.  But a full-blown mini-trial about the legal and factual underpinnings of the F.E.D. Action and the foreclosure proceedings will waste time, confuse the jury, and needlessly implicate attorney-client privilege issues.[2]  For all these reasons, even if evidence had some conceivable relevance, it should be precluded under F.R.E. 403.[3]

_____

[1]  Plaintiff noticed and held Ms. Copeland's deposition in the *Zinna v. Cook* case on October 23, 2009.   Mr. Congrove has not yet received a copy of Ms. Copeland's deposition transcript.

[2]  Jefferson County provided a limited waiver of the attorney-client privilege concerning Jefferson County's hiring of private investigator Daril Cinquanta and the work he performed.

[3] Mr. Congrove also believes that the Court's Order granting Mr. Congrove's Motion in Limine is fairly read to preclude Plaintiff from including the F.E.D. Action as part of his pattern of alleged retaliatory conduct.

## C. **The BJC Dispute.**

Plaintiff intends to argue at trial that Mr. Congrove's pattern of retaliation against Plaintiff included the "unilateral cancellation" of a settlement agreement between Jefferson County and BJC. The Court has twice ruled that Plaintiff may not recover damages relating to the BJC Dispute, first at the September 21, 2006 Scheduling Conference (*See Motion in Limine, pp. 4-5 [Dkt. # 263],* and again when it granted Mr. Congrove's *in limine* motion.

Mr. Congrove concedes that some evidence about the BJC Dispute will need to be presented to the jury. But Plaintiff should not be allowed to back-door the Court's previous Orders precluding Plaintiff arguing for damages allegedly flowing from the BJC Dispute. Nor should Plaintiff be permitted to make claims that are demonstrably unequivocally false.

As a matter of both fact and law, Jefferson County and BJC never entered into a valid, binding settlement agreement granting BJC rights to develop property at the Jefferson County Airport. Plaintiff has not, and cannot, produce a written, executed agreement between Jefferson County and BJC because no such agreement ever existed. Jefferson County acts through its duly elected Board of County Commissioners. C.R.S. §30-11-13; *Nicholl v. E-470 Pub. Highway Auth.,* 896 P.2d 859 (Colo. 1995), and the Board never discussed, considered, much less voted on the "agreement" Plaintiff alleges was reached. *See Mr. Congrove's Reply in Support of Motion in Limine, pp. 3-4. [Dkt.# 271].* In any event, under Colorado's Statute of Frauds, a contract to lease for more than one year is void absent a written and signed contract or memorandum. C.R.S. § 30-10-108. As a matter of fact and law, Plaintiff's claim that a lease agreement existed is incorrect and he

should not be permitted to argue otherwise to the jury.

Also, when Plaintiff does offer evidence about the BJC Dispute, Mr. Congrove respectfully requests that the Court instruct the jury when the evidence is offered that the Court has ruled Plaintiff cannot recover any damages relating to the BJC Dispute and that Plaintiff is introducing evidence concerning the BJC Dispute only relating to the claimed pattern of retaliation.  The Court's final instructions should again repeat this admonition to the jury.

### D.  **Wiretapping Issues**

Plaintiff maintains that on or about June 14, 2006, his emails were intercepted by someone acting at the direction of Mr. Congrove, a claim Mr. Congrove vigorously disputes.   Plaintiff has not asserted a wiretapping claim, nor does he need to prove wiretapping to prevail on his Section 1983 claim.   But Plaintiff's allegations about the alleged wiretapping are relevant to the material facts in dispute in this lawsuit.

Part of the retaliatory conduct about which Plaintiff complains involves the creation of the ColoradoWackoExposed website in late April or early May 2006.  Another part of the pattern alleged by Plaintiff is the mailing of Wacko Packets to Plaintiff's friends and business associates.  Plaintiff maintains that the sources of the information in the Wacko Packets came from his intercepted email correspondence.

Counsel for Mr. Congrove and Plaintiff have discussed the interplay between Plaintiff's Section 1983 claim and his allegations of wiretapping.  The parties believe, and respectfully submit, that although Plaintiff is not required to prove wiretapping as part of his First Amendment retaliation

claim, the facts giving rise to Plaintiff's assertion that his emails were intercepted are appropriately and necessarily part of the evidence that should be heard by the jury.

## III. <u>LEGAL ISSUES</u>

### A.  <u>First Amendment Activities</u>

<u>1. Relevant Procedural Background.</u>  When Mr. Congrove and Jefferson County filed their summary judgment papers in this case, the sole operative pleading was the Third Amended Complaint [Dkt. #89].  Mr. Congrove discussion of qualified immunity addressed only the allegations in the Third Amended Complaint.   At the summary judgment hearing, the Court ruled that Plaintiff's First Supplement was accepted for filing and that Mr. Congrove would be permitted to conduct discovery concerning the new allegations of wrongdoing.   Because of the procedural posture of this case, the parties did not brief the application of qualified immunity to the allegations involving the ColoradoWackoExposed website or the Wacko Packets, but Mr. Congrove continues to assert qualified immunity as a bar to Plaintiff's First Amendment retaliation claim.

To withstand Mr. Congrove's assertion of qualified immunity, Plaintiff's evidence must demonstrate (1) that Mr. Congrove's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation. *Baptiste v. J.C. Penney Co.*,  147 F.3d 1252, 1255 (10th Cir.1998); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir.1998).   Mr. Congrove concedes, as a general proposition, that a governmental official acting under color of state law may not retaliate against a person to punish them for having exercised his or her First Amendment rights.  But this general proposition is only

the beginning, not the end, of the qualified immunity analysis.

Plaintiff alleges that Mr. Congrove engaged in a pattern of retaliatory conduct to retaliate against Plaintiff.   The components of the alleged retaliatory conduct are important for two reasons. First, to prove the pattern Plaintiff must prove the components of that pattern.   Second, and more importantly for purposes of this discussion, the conduct at issue must, in the first instance be actionable conduct.

Plaintiff cites *DeLoach v. Bevers*, 922 F.2d 618 (10th. Cir. 1990) for the proposition that an act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.   Plaintiff presumes incorrectly, however, that all actions taken by a defendant are actionable.   They are not, particularly when the alleged retaliatory conduct involves a defendant's exercise of his own First Amendment rights.

2.   Absent a Threat of Coercive Governmental Action, an Official's Exercise of His First Amendment Right is Not Actionable.   Absent a threat of governmental regulatory action, speech by a government official, even if retaliatory, is generally not actionable.   A number of decisions from other federal circuits (discussed below) help provide some contour to this admittedly unsettled area of the law.   But the case most analogous to the present lawsuit is *Thoma v. Hickel*, 947 P.2d 816 (Alaska 1997).

In *Thoma*, a self-described political gadfly filed an ethics complaint against Governor Hickel, accused Hickel of ethical improprieties, and sought to have Governor Hickel recalled.  In response, Hickel decided to publicize Thoma's criminal record.  Among other things, Governor Hickel's press

secretary sent a letter to the Sierra Club describing Thoma as a "disreputable" character, pointing out that Thoma was "a convicted felon who spent time in jail for possession of cocaine [and] who has been found guilty of driving while intoxicated four times in a ten-year period."  947 P.2d 818.

Thoma sued Governor Hickel, asserting a Section 1983 First Amendment retaliation claim. On appeal, the Alaska Supreme Court recognized and ruled that citizens have the right to be free from acts of retaliation by officials made in response to speech or other activities protected by the First Amendment, citing as examples of actionable retaliation the improper discharge of public employees, harassment by government helicopters, and retaliatory cancellation of government issued permits.   But, noted the Alaska Supreme Court, a retaliation claim cannot be premised upon a government official's speech protected under the First Amendment, nor could it be predicated upon the allegedly improper accessing of Thoma's criminal records.   947 P.2d 821-22.    The Alaska Supreme Court, at 947 P.2d 821, explained its rationale as follows:

> Here, the act of retaliation was a letter.  As the letter was truthful, it is itself speech protected under the First Amendment.  **We have been cited to no case which holds that the federal constitutional tort of retaliation extends to retaliation by speech. We do not believe that imposing section 1983 liability on a public official who responds in kind to protected speech critical of the official would be consistent with the First Amendment.**  The First Amendment "was fashioned to assure unfettered interchange of ideas . . .." *New York Times, Co. v. Sullivan [cite omitted]*. . .  The First Amendment is reflective of 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.*  at 70, 84 S.Ct. at 721.  **Debate is impossible where only one side can speak.  Making public officials civilly liable for retaliatory speech would, in essence, convert the First Amendment model of an interchange into a one-way street.   As we believe this would be fundamentally inconsistent with the values protected by the First Amendment, we conclude that no valid claim of retaliation has been asserted by Thoma.** [emphasis added].

12

Reported Federal decisions involving claims of retaliation based on a defendant's exercise of his own First Amendment rights are consistent with *Thoma*.

For example, in *Suarez Corp. Industries v. McGraw*, 202 F.3d 676 (4th Cir. 2000), the Fourth Circuit dismissed Plaintiff's First Amendment retaliation claim premised on defendants' exercise of free speech. Plaintiff there (SCI) marketed consumer goods through direct mail marketings. The West Virginia Attorney General sued SCI for violating the state's Consumer Credit and Protection Act. During the litigation, defendants learned from Washington State's Attorney General that SCI's *modus operandi* for fighting state investigations was to engage in an extensive media campaign criticizing public officials. SCI did exactly that, criticizing Attorney General McGraw and his deputy Thomas Rodd. In response, Rodd told reporters that "people are tired of being victimized" and informed other state attorney generals that SCI had been sued for mail fraud. Rodd also informed the Better Business Bureau that the West Virginia AG's office could not respect the BBB if it tolerated SCI's conduct, and would not assist the BBB's efforts to expand into West Virginia if SCI continued to remain a BBB member. SCI also claimed that McGraw and Rodd defamed SCI by claiming that SCI (a) preys on the elderly, infirm, and incapacitated; (b) is a gambling syndicate from Ohio; (c) has a documented proclivity to violence; and (d) has links to organized crime. Meanwhile, SCI waged a widespread media campaign against McGraw and Rodd, focusing not only on the conduct in the SCI litigation, but also focusing on their personal lives.

In dismissing SCI's First Amendment retaliation claim, the Fourth Circuit ruled:

The nature of the alleged retaliatory acts has particular significance where the public

13

official's acts are in the form of speech.  Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated.  **Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.**

202 F.3d at 687.  Citing decisions from the Second, Fifth, and D.C. Circuits, as well as *Thoma*, *Suarez* makes clear that a First Amendment retaliation claim cannot be premised upon a public official's speech, even if the that speech is retaliatory, unless the official's speech includes a threat of governmental punishment, sanction, or adverse regulatory action (e.g., revocation of permits, termination of government employment, etc.).[4]

In *Hammerhead Enterprises, Inc. v. Brezenoff*, 701 F.2d 33 (2nd Cir. 1983) the Second Circuit affirmed the dismissal of a First Amendment retaliation claim against Defendant Brezenoff, New York's Administrator of Human Resources.  Plaintiff there created and distributed a board game, "Public Assistance", which ridiculed welfare programs and welfare recipients.  Brezenoff wrote to local department stores, urging them to keep the game off their shelves.   The Second Circuit noted that the right of free speech entitles citizens to openly and proudly object to established government policy, but it "does not immunize the challengers from reproach." 701 F.2d at 35.  But, noted the Second Circuit,  "where comments of a government official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to

---

[4] The Fourth Circuit recognized one "possible exception" might exist where an official discloses embarrassing, humiliating, or emotionally distressful information about an individual. 202 F.3d 688.  Mr. Congrove is unaware of any reported Tenth Circuit decision recognizing that exception.

accede to the official's request, a valid claim can be stated." 701 F.2d at 39.   Since there was no

evidence to support a claim of punishment or adverse regulatory action, the Second Circuit affirmed

the trial court's dismissal of  the claim.

Similarly, in *McBride v. Michiana*, 100 F.3d 457(6th Cir. 1996), a journalist asserted a First

Amendment retaliation claim against various government officials, asserting a laundry list of alleged

retaliatory actions.  Although the Sixth Circuit ruled that defendants were not entitled to qualified

immunity, it emphasized that only improper acts of retaliation are forbidden.  The proper exercise

by the defendants of their own free speech rights cannot serve as the basis for imposition of liability.

100 F.3d at 462.

Mr. Congrove is unaware of any reported Tenth Circuit decision holding that a First

Amendment retaliation claim can be predicated upon an official's exercise of his First Amendment

rights.  To the contrary, the Tenth Circuit has acknowledged that it has never found a First

Amendment violation based on disparaging comments alone.   *Hardeman v. City of Albuquerque*,

377 F.3d 1106, 1118 (10th Cir. 2004) *See also Evans v. Fogarty*, 2007 WL 2380990 (10th Cir.

2007)(unpublished, copy attached as *Attachment A*)(concluding that even if terms "crooks" and

"frauds" were defamatory, as opposed to words of general disparagement or abuse, defendant

entitled to judgment as a matter of law, since defamatory comments alone insufficient to support

First Amendment retaliation claim where evidence failed to establish defendant personally

participated in other retaliatory action).

Put simply, Mr. Congrove maintains that his alleged First Amendment activity (creating the

ColoradoWackoExposed website and mailing information about Plaintiff to Plaintiff's friends and

15

associates is not actionable conduct here, because there was no threat of governmental retaliation. But even if the Court were to conclude otherwise, Mr. Congrove is entitled to qualified immunity as to the alleged activities, because the law was not clearly established in 2006 (nor is it clearly established now) that such conduct was unlawful.

     4.  <u>The Law Was Not Clearly Established that Mr. Congrove's Alleged First Amendment Activities Would Violate Plaintiff's First Amendment Rights.</u>  The Tenth Circuit in *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1118 (10th Cir. 2004) expressly recognized that whether an official's exercise of his First Amendment rights constitutes actionable conduct is not clear under current law.  In *Hardeman*, a terminated employee sued her former employer alleging, among other things, that her First Amendment rights were violated when she was subjected to disparaging public comments and denied a post-termination contract that was promised to her because of her perceived association with African-American groups. 376 F.3d at 1110.  The jury agreed and awarded her damages.

     On appeal, defendants challenged the jury verdict form, claiming that the use of "and/or" permitted the jury to award damages based on disparaging public comments alone.  Because defendants failed to object to the verdict form, defendants were required to demonstrate plain error, which required them to show, among other things, that the verdict form was clearly or obviously wrong under current law.

     The Circuit Court acknowledged that several circuits have declined to find a First Amendment violation on the basis of disparaging statements and noted that decisions from other circuits reached a contrary conclusion. 376 F.3d at 1118-19.  Thus, noted the Tenth Circuit, "given

16

the ambiguity in the case law, it is not certain that the Mayor's disparaging comments actually violated Ms. Hardeman's First Amendment rights.  As there is some support for both sides of this issue, however, it is not 'clear or obvious under current law' [cite omitted] that [the verdict form] was in error." 376 F.3d at 1119.

*Hardeman* is significant for two reasons.  First, it established that the law is not clear or obvious that a First Amendment retaliation claim may be predicated solely upon an official's exercise of his own First Amendment rights.  Second, it did not resolve the uncertainty in the law, an uncertainty that remains today.

Assuming, for argument's sake, that Mr. Congrove was involved in the website and mailings (which he denies), neither the website nor the mailings contained any threats, direct or implied, of governmental action of any kind.  Because the law was not clearly established that an official's First Amendment activity was unlawful, it may not be included in Plaintiff's alleged pattern of retaliatory conduct.[5]

## IV. **JURY INSTRUCTION ISSUES**

Plaintiff's alleged pattern of retaliatory conduct is only as viable as the individual components or predicate acts it includes.  Mr. Congrove respectfully submits that the jury must make specific findings about each component of the pattern.  For any component to be included in the verdict form, Plaintiff must provide a legally sufficient evidentiary basis from which a reasonable

---

[5] Mr. Congrove reserves the right to further address his qualified immunity claim as it applies to all aspects of Plaintiff's claim, at the appropriate time.

jury could find for Plaintiff that (a) Mr. Congrove engaged in the specific conduct at issue; (b) that he did so while acting under color of state law; and (c) that his conduct was substantially motivated as a response to Plaintiff's constitutionally protected activity. Mr. Congrove does not include injury in this equation, because whether Plaintiff suffered an injury that would cause a person of ordinary firmness to be chilled in the exercise of his First Amendment rights must be based on the conduct that is properly included in the alleged pattern.

Mr. Congrove respectfully submits that his alleged involvement (which he denies) in the website and mailings should not be included in the verdict form at all, since (1) the conduct is not actionable and (2) if the conduct is actionable, because the law was not clearly established, Mr. Congrove is entitled to qualified immunity. But should the Court disagree, it will be particularly important for the jury to make specific findings about Mr. Congrove's alleged conduct, particularly in light of the unsettled law in this circuit governing when an official's First Amendment activities are or are not actionable.

Mr. Congrove includes as *Attachment B* a Special Form of Verdict [Alternative C] for the Court's consideration. The attached form of verdict differs from the forms of verdict Mr. Congrove previously submitted, but he respectfully submits the attached form of verdict should be given to the jury. Regardless of what form of verdict the Court uses, Mr. Congrove respectfully requests that the form of verdict specifically address each component or predicate act which Plaintiff contends is included in his alleged pattern of retaliation.

DATED this  3rd day of November 2009.

**DILL DILL CARR STONBRAKER
& HUTCHINGS, P.C.**

 /s/ Patrick D. Tooley
Patrick D. Tooley, #15273
Kevin M. Coates, #25995
455 Sherman St., Suite 300
Denver, CO  80203
303-777-3737
***Attorneys for James Congrove***