UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01016-RPM

MICHAEL L. ZINNA,

    Plaintiff,
v.

JUDY CONGROVE, as personal representative of the estate of James Congrove, deceased,

    Defendant.
_____

FINDINGS, CONCLUSIONS AND ORDER ON PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES UPON REMAND
_____

Pursuant to the mandate from the Tenth Circuit Court of Appeals and the opinion of June 5, 2012, vacating the order of this court entered on September 24, 2010, awarding $8,000.00 as an allowance of attorneys' fees pursuant to 42 U.S.C. § 1988, and that court's directions "to determine–based on the facts and the time sheets submitted by Zinna–what work warrants reimbursement," the relevant filings in this court have been reviewed. The briefs filed with the appellate court have also been reviewed to better understand the view of this protracted litigation that was expressed in the opinion.

The appellant's brief describes the outcome of the jury trial in this civil action in the following paragraphs:

> Mr. Zinna proved at trial that Defendant James Congrove used his authority as a government official to try to stop Mr. Zinna from investigating, reporting, and talking about governmental misconduct. During eight days of trial, the details of Defendant's stunning abuse of power were uncovered. Defendant used public funds in a campaign to discredit and frighten Mr. Zinna and those close to him in retaliation for Mr.

> Zinna's exposes.  After hearing all the evidence, the jury not only wanted to compensate Mr. Zinna for the harm he endured, the jury wanted to ensure that there was no mistake about Defendant's violation of Mr. Zinna's free speech rights.
>
> The First Amendment was ratified in 1791 and the jury awarded Mr. Zinna $1,791.  This powerful verdict encourages journalists to report on the misdeeds of those in power and is designed to curb retaliation against those who speak out.  By its unprecedented and historic verdict, the jury told the Defendant, and all of his colleagues, that in this country, governmental officials are not above the law.
>
> Appellant's Reply Brief[1]

That is a gross simplification of the dispute that began when Mr. Zinna, represented by his then attorney, Chris Paulsen, filed this lawsuit on June 3, 2005, naming Jefferson County and 18 current and former county officials in their official and individual capacities, even including a law clerk to a state district court judge, seeking millions in damages in connection with state court litigation with a corporation seeking to develop airport property in which Mr. Zinna's only interest was an agreement to split profits with the owner.  Included in the multiple claims was an allegation of a First Amendment violation.

After extensive motion pleading resulting in dismissal of most of the defendants, a third amended complaint was filed on January 5, 2006, asserting a single claim under 42 U.S.C. § 1983 against Jefferson County; Commissioners Congrove, McCasky and Auburn; Sheriff Mink and County Administrator Moore.  All defendants except Congrove were dismissed on motions.  Chris Paulsen withdrew as the plaintiff's attorney in November, 2006, and Mr. Zinna proceeded *pro se* until Christopher Beall entered his

---

[1] Trial counsel, Christopher Beall, withdrew from the case.  The appeal was prosecuted by other counsel.

appearance for the plaintiff on November 24, 2007. A motion to supplement the Third Amended Complaint was granted on November 24, 2007, and the case proceeded against Congrove as the only defendant on a claim of abusive governmental activities in retaliation for Zinna's actions protected by the First Amendment.

Zinna claimed damages of more than $29 million for interference with settlement negotiations between the county and the corporate developer and $250,000 for loss of tenants in office units at the airport for which Zinna had management contracts. This Court dismissed those elements of damages on motions in limine before trial.

The trial began on November 30, 2009. At trial Zinna claimed more than $2 million for lost revenues from loss of sponsors for his radio show. That claim was dismissed under Fed.R.Civ.P. 50(a).

During deliberations the jury asked for the date of the adoption of the First Amendment and after being told it was 1791, they returned a verdict for $1,791. The defendant had requested that the Court submit interrogatories for the jury separately to decide on each category of claimed retaliatory conduct by Jefferson County officials and employees for which Congrove was to be held responsible. The Court refused and submitted a general verdict at the plaintiff's request.

In *Lippoldt v. Cole,* 468 F.3d 1204 (10th Cir. 2006) the court reaffirmed earlier opinions requiring district courts to apply the three factors from Justice O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) to determine the relevant indicia of success in an action for damages under 42 U.S.C. § 1983: "the extent of relief, the significance of the legal issue on which plaintiff prevailed and the public purpose served." *Id.*

Those factors were re-stated in *Lippoldt* as follows:

> To determine whether the plaintiff achieved technical success only, we apply three factors from Justice O'Connor's concurrence in *Farrar*: (1) the "difference between the amount recovered and the damages sought;" (2) the "significance of the legal issue on which the plaintiff claims to have prevailed;" and (3) the "accomplishment of some public goal other than occupying the time and energy of counsel, court, and client."

### The Degree of Success Obtained

When the trial started and throughout the plaintiff's presentation of his case, Zinna claimed that defendant Congrove caused county officials to conduct antagonistic activities resulting in the loss of his radio and television career for which substantial economic damages were claimed. As noted those losses were excluded from the jury for the failure of proof.

The jury was instructed to determine the amount of money to fairly and justly compensate for any mental or emotional suffering Mr. Zinna has experienced if they found for him on his claim of retaliation for First Amendment activities and, upon a finding that he suffered no damages, to award nominal damages of one dollar.

By returning a verdict for an award of $1,791 after hearing that the First Amendment was adopted in the year 1791, it is apparent that the jury rejected the plaintiff's evidence of emotional injury and adopted their own measure of nominal damages. There is no relationship between the amount of damages in the verdict and the evidence received at trial. Far from a "powerful" and "historic" verdict, the jury's evident evaluation of this case was that Congrove's violation was merely technical. The disproportion between the extravagant damages claimed, which were not supported by sufficient evidence to submit to the jury, and the ultimate result achieved warrants the

conclusion that this was no more than a technical victory.

## The Significance of the Legal Issue

As recognized in this court's order of September 24, 2010, the protection of a citizen's right to comment on the conduct of governmental officials is of paramount importance in a democratic society.  Accepting the view that Mr. Zinna is representative of a new kind of journalist using the internet and electronic media in "muckraking efforts" to bring to light abuses of power and to provide interactive forums using talk radio and internet blogs, the content of the protected speech in this case is far removed from the work of such pioneering investigative journalists as Lincoln Steffens in the early years of the Twentieth Century.

The evidence at trial showed Zinna publishing a consistent pattern of vituperative and vitriolic personal attacks as in the following examples:[2]

> Two commissioners like _____ and _____ are inextricably joined in their reign of terror.  These two, by virtue of their alliance control a Crime Family called Jefferson County Government–The Jeffco Mafia.  *Trial Exhibit A-25, p.1;*

> Considered by many insiders to be psychopathic and schizophrenic with an unmatched ability to shift personalities and behavior without warning. _____ earned the name _____ more than a decade ago because of the many eye witness accounts of multiple simultaneous sexual partners of both genders.  *Trial Exhibit B-3, p.1*

> . . . and you _____, well you're _____, Jefferson County's Number One _____ and _____ Butt Kisser. [Your wife] must be so proud of you. _____. You're the only man in Jefferson County who can simultaneously talk out of both sides of his mouth, AND, lick both of his bosses' rear-ends.  *Trial Exhibit -5, p.5;*

---

[2]   The names have been deleted to avoid further repetition damaging to those not parties to this case.

> Assistant County Attorney \_\_\_\_\_, thank you so much for recently wearing more clothing, not less.  Going from seeing Attorney \_\_\_\_\_ every Tuesday to you was beginning to shake our faith in the sanctity of female beauty.  Oops, we forgot, you're not a woman, you're an attorney first.  he he ... maybe not for long.  *Trial Exhibit B-5, p.5.*

> \_\_\_\_\_ is a professional moron, possessing caveman-like skills.  *Trial Exhibit A-25, p.2*

> Former District Attorney \_\_\_\_\_–Total Conniving, Deal-Making, Chicken-Sh\*\* Coward of a Prosecutor, Always Running For A Higher Office, Unfit To Be An Attorney S.O.B.  *Trial Exhibit A-8, p.3*

Even in the permissive cultural climate that pervades in public communications, there is little in these attacks that could be considered of any value in promoting transparency and accountability in government.

## The Purpose of the Litigation

As noted earlier, this lawsuit began with a complaint seeking tens of millions of dollars against multiple defendants on broad theories of liability centered on the failure of Jefferson County to accept the proposals of Zinna's friend to develop property at the Jefferson County Airport.  In the course of the litigation before trial, Mr. Zinna admitted that this friend financed this lawsuit.  The case narrowed down to focus on the defendant Congrove because the broader claims were baseless and Zinna felt betrayed by Congrove in failing to support a negotiated settlement of the developer's case.  This background was not before the Court of Appeals because all of these matters were revealed in the proceedings prior to the trial of the First Amendment claim.

In the full context of the entire record of this civil action spanning over four years, it is this court's finding that in his dogged pursuit of Jefferson County and its officials Michael Zinna was indulging in a personal vendetta based on a frustrated expectation of

substantial gain from a failed real estate venture of his friend and that the wedge issue of a violation of the First Amendment was his last remaining chance for revenge.

Nothing at the trial of this case served any substantial public purpose in disclosing political corruption or any egregious abuse of power in counteracting this public scold. It revealed a dissatisfaction with the outcome of state court litigation.

The jury's verdict that Congrove abridged Zinna's First Amendment protection must be accepted but in the full context of this case there is no such vindication of the role of journalism in our society as to warrant any substantial award of attorneys' fees.

A factor not mentioned in *Farrar* or in the appellate court's opinions is the fact that the defendant bears the burden of paying the fee award. Fairness in imposing that burden requires consideration of the fact that Congrove had to defend himself over those years in court against multiple claims that never made it to trial.

It would be a great injustice to now saddle his estate with a large fee award.

Trial counsel has submitted his time sheets and those of his associates. Normally a lodestar analysis of them would be required to determine the reasonableness of the time spent and the hourly rates claimed in making a fee award. That is not necessary in this case. Whatever the outcome of such an analysis would be, the sum must be very substantially reduced by the application of the *Farrar* factors.

The time sheets submitted by plaintiff's counsel include substantial time relating to motions which the plaintiff lost and extensive trial preparation. For the eight days of trial, Mr. Beall included preparation time and actual trial time for each day at a $290.00 hourly rate. Because a substantial reduction is warranted, given that only a technical violation was proven, a reasonable fee is measured by the application of his $290.00

rate to seven hours daily for the eight days resulting in a total of $16,240.00.  No fees are warded for the other participants from Mr. Beall's firm.

Accordingly, it is

ORDERED, that the plaintiff Michael Zinna shall recover $16,240.00 for fees incurred in this case.

Because the determination of Zinna's appellant counsel fees must await further proceedings, the judgment will not be altered until that is done.

DATED: November 8th, 2012

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge