IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 05-cv-01016-PAB

MICHAEL L. ZINNA,

      Plaintiff,

v.

JUDY CONGROVE, as personal representative of the estate of James Congrove,
deceased,

      Defendant.

_____

**ORDER**
_____

      This matter comes before the Court on Plaintiff's Motion for Award of

Reasonable Attorney's Fees and Non-Taxable Costs [Docket No. 326], Defendant

Estate of James Congrove's Request for Ruling on Plaintiff's Motion for Attorney Fees

[Docket No. 424], and defendant's Motion to Substitute Jefferson County as Defendant

[Docket No. 425].

## I. BACKGROUND

      Plaintiff filed this lawsuit in 2005. Docket No. 1. The Tenth Circuit has

summarized the underlying facts of this case as follows:

> [Plaintiff] was affiliated with BJC Development Corporation ("BJC") in 2000
> when a real estate transaction between BJC and Jefferson County,
> Colorado failed to materialize. The ensuing dispute was ongoing in 2003
> when [plaintiff] launched the website JeffcoExposed.com, and later,
> ColoradoExposed.com. These websites served as platforms through
> which [plaintiff] reported on public meetings and speculated about
> corruption in Jefferson County government. . . . After the websites caught
> the attention of several Jefferson County Commissioners, including
> [defendant, plaintiff] became the target of a variety of antagonistic

conduct.

*Zinna v. Congrove*, 680 F.3d 1236, 1237-38 (10th Cir. 2012) ("*Zinna I*"). Plaintiff initially asserted a variety of claims against nineteen defendants. *Id.* at 1238. By the time of trial, however, the only claim remaining was a claim for First Amendment retaliation against defendant James Congrove. *Id.*; *see also* Docket No. 273; Docket No. 288 at 3-4. On December 9, 2009, a jury returned a verdict in plaintiff's favor, finding that defendant had "used his authority as a Jefferson County Commissioner to take adverse action against [plaintiff] in violation of the First Amendment to the United States Constitution." Docket No. 316-1. The jury awarded plaintiff $1,791 in damages. *Id.*

On January 20, 2010, plaintiff filed a motion seeking $491,417.50 in attorney's fees and costs. *See* Docket No. 326. The court[1] analyzed the factors set forth in *Farrar v. Hobby*, 506 U.S. 103, 116-22 (1992),[2] and concluded, based on those factors, that plaintiff should recover only the "reasonable cost of presenting this case to the jury which warrants a fee of $8,000." Docket No. 356 at 3. On appeal, the Tenth Circuit found that the court misapplied the *Farrar* factors and held that plaintiff's "victory was not merely technical" and that plaintiff "is entitled to the reasonable attorneys' fees related to his successful First Amendment claim." *Zinna I*, 680 F.3d at 1242. The Tenth Circuit further found that the $8,000 fee was not based on an appropriate lodestar calculation. *Id.* The Tenth Circuit remanded the case for further proceedings.

---

[1]This case was assigned to another judge in this district until July 2014.

[2]The *Farrar* factors are: (1) the degree of success obtained, (2) the extent to which the plaintiff succeeded on his theory of liability, and (3) the public purpose served by the plaintiff's success. *See Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997).

On remand, the court again found that the jury's minimal award indicated "the jury's evident evaluation . . . that [defendant's First Amendment] violation was merely technical." Docket No. 391 at 4. Based on the finding that plaintiff established only a technical First Amendment violation, the court awarded plaintiff $16,240 in attorney's fees, "measured by the application of [plaintiff's counsel's] $290.00 rate to seven hours daily for the eight days" of trial. *Id.* at 7-8. In a separate order, the court awarded plaintiff attorney's fees and costs totaling $18,687.50 for the time spent on plaintiff's appeal in *Zinna I*. Docket No. 398 at 7.

On appeal, the Tenth Circuit concluded that the court, in limiting plaintiff's award of attorney's fees to $16,240, "acted in contravention of the law of the case doctrine." *Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014) ("*Zinna II*"). Because the Tenth Circuit held in *Zinna I* that plaintiff's victory was not merely technical, the court was not permitted to reach the contrary conclusion on remand. *Id.* The Tenth Circuit affirmed the court's award of appellate fees, but remanded the case for further proceedings and ordered that the case be reassigned to a different district judge. *Id.* at 1182-83.

The case was subsequently reassigned to this Court. Docket No. 412. The Court ordered plaintiff's counsel to file a status report indicating whether the case could be resolved on the current record or whether plaintiff intended to submit further briefing on the issue of appellate fees. Docket No. 418 at 4. Plaintiff indicated that he did not intend to file a motion for attorney's fees with regard to his second appeal, and that the record was "complete for the adjudication of the plaintiff's initial motion for attorney's

fees and costs."  Docket No. 419 at 1-2, ¶¶ 1, 3.

## II.  MOTION FOR ATTORNEY'S FEES

### A.  Scope of Remand

The Court begins by clarifying the issues that need not be addressed in this order.

In his status report, plaintiff states that "it is incorrect to assume . . . that a proper *Farrar* analysis has previously been performed by the Court."  Docket No. 419 at 3.  To the extent this argument implies that the Court is obligated to re-weigh the *Farrar* factors, the Court disagrees.  The Tenth Circuit has already considered the *Farrar* factors and determined that plaintiff achieved more than a technical victory at trial. Accordingly, the Court may not re-weigh those factors for purposes of this remand.  *See Zinna II*, 755 F.3d at 1180 n.1 ("Our prior opinion made clear that Zinna achieved more than a technical victory at trial.  Thus, . . . the district court violated our mandate by reevaluating the *Farrar* factors and determining trial fees without first calculating a lodestar.");  *Zinna I*, 680 F.3d at 1242 (remanding "for the district court to determine – based on the facts and the timesheets submitted by Zinna – what work warrants reimbursement").

The Court also does not need to address the issue of costs or appellate fees.  As the Tenth Circuit noted in *Zinna II*, *Zinna I* did not disturb Judge Matsch's September 24, 2010 award of costs.  *Zinna II*, 755 F.3d at 1183.  Moreover, plaintiff waived any challenge to Judge Matsch's March 15, 2013 award of appellate fees by inadequately briefing the issue on appeal.  *Id.* at 1182-83.

The Court's task, for purposes of this remand, is therefore limited to determining a reasonable award of trial attorney's fees.

## B.  Lodestar

Plaintiff moves for an award of $503,562 in attorney's fees under 42 U.S.C. § 1988(b) and D.C.COLO.LCivR 54.3.  *See* Docket No. 326 at 1; Docket No. 348 at 1, 19 (increasing fee request to $503,562).  Section 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of section[] 1983 . . . of this title . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Because "[t]he purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances[,] . . . . a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted).[3]

The reasonableness of a fee request is determined by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433.  While there is a strong presumption that this method yields a reasonable fee, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010), the party seeking an award of attorney's fees has the initial burden of establishing the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

---

[3]There is no dispute that plaintiff is the prevailing party for purposes of his fee request.  *See* Docket No. 339 at 1 (agreeing that, "[b]y virtue of the jury's verdict, Plaintiff is the prevailing party for purposes of his claim for attorney fees and non-taxable costs").

### 1.  Hourly Rate

Plaintiff requests compensation for work performed by attorneys Christopher Beall, Chris Paulsen, and Adam Platt, as well as paralegal work performed by Marla Kelly and Steven Zansberg.  Docket No. 326 at 5.  Defendant argues that the hourly rates for Mr. Paulsen and Mr. Platt are unreasonable.  Docket No. 339 at 11, 13.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).

Plaintiff proposes an hourly rate of $225 per hour for Mr. Paulsen.  Docket No. 348 at 11.[4]  During the period in which Mr. Paulsen served as plaintiff's attorney – June 3, 2005 to November 16, 2006, *see* Docket Nos. 1, 123 – he was a solo practitioner with between four and five years of legal experience.  Docket No. 326-11 at 2.  Given Mr. Paulsen's experience, plaintiff's proposed billing rate is well within the range of attorney billing rates reported in the Colorado Bar Association's 2008 Economic Survey, *see* Docket No. 326-9 at 2 (reporting billing rates ranging from $150 to $286 per hour for an attorney with less than five years in practice), and commensurate with rates approved in other cases in this district.  *See, e.g.*, *Colo. Right to Life Committee, Inc. v. Kaufman*, No. 03-cv-01454-WDM, 2008 WL 4197790, at *3 (D. Colo. Sept. 10, 2008)

_____

[4]While plaintiff suggests an hourly rate of $275 in his fee motion, Docket No. 326 at 5, this is inconsistent with the rate charged by Mr. Paulsen for his work on plaintiff's behalf.  Docket No. 326-10.  Given that plaintiff argues in favor of a $225 rate in his reply brief, the Court assumes that the $275 figure is a typographical error.

(finding $200 to be a reasonable hourly rate for "inexperienced attorneys"); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *5 (D. Colo. July 27, 2006) (finding $275 to be a reasonable hourly rate for associate attorneys); *Bat v. A.G. Edwards & Sons, Inc.*, No. 04-cv-02225-REB-BNB, 2006 WL 446078, at *3 (D. Colo. Feb. 21, 2006) (approving of $190 hourly rate for attorney with two years' experience). Although defendant argues that $150 per hour would be more appropriate, defendant has not rebutted plaintiff's evidence that $225 per hour is a reasonable hourly rate for an attorney with Mr. Paulsen's experience.[5]

With regard to Mr. Platt, the Court finds that plaintiff's proposed billing rate – $245 per hour – is high, given that Mr. Platt was an associate attorney with only two to three years of legal experience when he worked on this case. Docket No. 326-1 at 6, ¶ 16; Docket No. 326-8.[6] The Court finds $225 per hour to be a more reasonable hourly rate. Defendant advocates for a lower hourly rate of $175, Docket No. 339 at 13, but makes no showing that such a rate is reasonable for an attorney with Mr. Platt's education and experience. Moreover, the Court has already determined that $225 is a reasonable hourly rate for Mr. Paulsen. Although Mr. Platt had fewer years in practice than Mr. Paulsen, he also had specific experience representing the news media. Docket No. 326-1 at 6, ¶ 16. A rate of $225 is therefore appropriate.

---

[5]Defendant suggests that Mr. Paulsen's hourly rate should be reduced based on the quality of his work. *See* Docket No. 339 at 11 (noting that the "original and first amended complaint were prolix and incomprehensible"). The Court disagrees. Defendant does not develop this argument, and the rate of $225 per hour already accounts for Mr. Paulsen's limited experience as an attorney.

[6]Mr. Platt entered his appearance in this case on June 2, 2008. Docket No. 218. He withdrew as counsel on May 3, 2010. Docket Nos. 349, 350.

Defendant does not challenge the hourly rates for the work performed by Christopher Beall, Marla Kelley, and Steven Zansberg. Nonetheless, the Court finds that plaintiff's proposed billing rate of $160 per hour for paralegal work is unsupported. Such a rate is at the high end of the paralegal billing rates reported in the Colorado Bar Association's 2008 Economic Survey, *see* Docket No. 326-9 at 35 (reporting rates ranging from $74 per hour to $173 per hour, depending on experience), and would only be appropriate for a paralegal with significant experience. Because plaintiff has not provided any information regarding the experience and qualifications of Ms. Kelley and Mr. Zansberg, the Court finds $100 per hour to be a reasonable rate for the work they performed on this case.[7] This rate is consistent with the rates generally approved for paralegal work in this district. *See, e.g.*, *Morris v. Potter*, No. 06-cv-00432-MSK-CBS, 2008 WL 5381475, at *6 (D. Colo. Dec. 22, 2008) (finding rate of $100 per hour for paralegal time to be reasonable); *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, No. 07-cv-00839-LTB-BNB, 2008 WL 5044499, at *2 (D. Colo. Nov. 19, 2008) (approving rate of $75 per hour for paralegal time); *Lucas*, 2006 WL 2729260, at *5 (approving of blended average rate of $110 per hour for work done by paralegals).[8]

### 2. *Hours Expended*

To determine the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinally

---

[7]To the extent plaintiff seeks reimbursement for paralegal work performed by Mr. Platt, *see* Docket No. 348 at 13, the same rate will apply.

[8]By contrast, the Court finds plaintiff's proposed hourly rate for Mr. Beall, $275 - $290, to be reasonable and will apply that rate in determining the lodestar.

be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987). The party seeking fees must also demonstrate that its counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005); *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan*., 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."). "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554. Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553.

Plaintiff seeks reimbursement for a total of 1,971.6 attorney and paralegal hours expended on the litigation. Docket No. 348-1 at 5. Defendant challenges this amount on three grounds. First, he contends that plaintiff's hours calculation should be reduced

to account for computational errors. Docket No. 339 at 10-11. Second, defendant argues that plaintiff is not entitled to fees for work performed on matters that should have been delegated to support staff, work performed by Mr. Beall before he became counsel of record, and work that was redundant or irrelevant. *Id.* at 13. Finally, defendant requests that the Court reduce the attorney hours included in plaintiff's fee motion to account for time spent on unsuccessful claims. *Id.* at 11-12, 13-16.

### a. Calculation Errors

Defendant asserts that plaintiff's counsel miscalculated the number of hours reflected in his time records. *See* Docket No. 339 at 10-11. In the contested time entries, plaintiff's counsel charged for 102.70 hours expended on the litigation. *See* Docket No. 339-1 at 44. According to defendant, however, those same entries reflect a total of only 79.7 hours. *See id.* While plaintiff concedes the majority of the computational errors identified by defendant, he argues that counsel's time entries for October 14, 2009 and November 6, 2009 are accurate. *See* Docket No. 348 at 9-10; *see also* Docket No. 326-2 at 55, 58 (showing contested time entries). The Court agrees and therefore accepts plaintiff's revised time records, Docket No. 348-1, which remedy the computational errors correctly identified by defendant.

### b. Unnecessary, Redundant, or Noncompensable Work

Defendant objects to three categories of time entries included in plaintiff's billing records: (1) time spent on "irrelevant," "unrelated," or "unnecessary" matters; (2) time spent on tasks that could have been performed by a paralegal; and (3) time spent by Mr. Beall before he had formally entered an appearance on behalf of plaintiff. *See*

Docket No. 339-1 at 45-49.[9]

    As to the first category, plaintiff asserts that the time entries for November 16, 2007 and August 2009 were related to either the scheduling of discovery matters in this lawsuit or counsel's efforts to respond to defendant's request for information concerning attorney's fees and costs.  Docket No. 348 at 12.  Plaintiff also contends more broadly that "the vast bulk of the time entries challenged [by defendant] relate to work generated by the defendant's discovery demands and discovery tactics concerning economic damages."  *Id.* at 13.  In his declaration,  Mr. Beall stated that only those hours spent on this action were included in the compilation of time entries.  Docket No. 326-1 at 4.  Given defendant's failure to elaborate on his objections, *see* Docket No. 339 at 13 (arguing only that plaintiff is not entitled to fees for "redundant or irrelevant matters"); Docket No. 339-1 at 45-47 (stating, without further elaboration, that hours claimed were "unrelated," or "unnecessary"), the Court finds no basis on which to exclude the challenged hours from plaintiff's lodestar calculation.[10]

    Defendant next challenges plaintiff's entitlement to fees for hours spent on matters that could have been delegated to support staff.  Docket No. 339 at 13. Plaintiff concedes that these hours should have been billed at a paralegal rate.  *See*

_____

    [9]To the extent that defendant challenges plaintiff's entitlement to fees for hours spent on unsuccessful claims, *see* Docket No. 339 (challenging hours spent on matters in which plaintiff "obtained no results"); Docket No. 339-1 at 45-47 (challenging time spent on claim for economic damages), that issue will be addressed below.

    [10]Plaintiff concedes that the April 26, 2009 entry for revisions to "M. Zinna draft discovery requests to D. Cinquanta" related to a different case and has excluded those hours from his amended time records.  *See* Docket No. 348 at 13 n.3; *see also* Docket No. 348-1 at 56.

Docket No. 348 at 13. Plaintiff's fee award will therefore be adjusted in accordance with the paralegal rate set above.

Defendant's final argument is that plaintiff should not be compensated for hours expended by Mr. Beall before he became counsel of record. Docket No. 339 at 13. This argument is without merit. The Tenth Circuit has held that whether an attorney has entered an appearance in a case is not relevant to the issue of attorney's fees. *See Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998) (noting that "our cases do not require an entry of appearance in order for the court" to grant an award of attorney's fees). Because plaintiff has demonstrated that Mr. Beall's time was spent on matters related to this litigation, *see* Docket No. 348 at 14 (explaining that Mr. Beall was "advising and counseling" plaintiff as to this litigation); Docket No. 339-1 at 49 (challenged time entries reflecting time spent on matters related to litigation), Mr. Beall's pre-appearance hours will not be excluded from plaintiff's fee award.[11]

### c. Reduction to Account for Partial Success

Defendant argues that any fee award should be substantially reduced to account for plaintiff's limited success in the litigation. Specifically, defendant requests that the Court (1) exclude, from the lodestar calculation, the hours spent by Mr. Paulsen on claims unrelated to defendant; (2) exclude the hours spent by Mr. Beall on unsuccessful claims; and (3) reduce the lodestar amount by seventy-five percent. *See* Docket No. 339 at 11-12, 13-16.

---

[11]Defendant does not challenge the reasonableness of Mr. Beall's pre-appearance hours on any other ground.

When a party prevails on only certain claims, the Court applies a two-part framework to determine a reasonable fee award. *See R. M-G. v. Bd. of Educ. for the Las Vegas City Schools*, 645 F. App'x 672, 676 (10th Cir. 2016) (unpublished). The Court first asks whether the party lost "on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. If so, the unrelated claims must "be treated as if they had been raised in separate lawsuits, and . . . no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. If the claims are related, however, the Court must consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Plaintiff's first amended complaint asserted three causes of action against nineteen defendants. Plaintiff's first cause of action alleged violations of the federal Racketeer Influenced and Correct Organizations ("RICO") statute, 18 U.S.C. § 1964, and civil conspiracy under Colorado law. *See* Docket No. 61-1 at 47-51. These claims were based on allegations that various county officials had conspired to: (1) breach their contractual duties under the development agreement entered into by BJC Development Corporation and Jefferson County by failing to negotiate the agreement in good faith, *id.* at 13-15, ¶¶ 41-47; (2) threaten BJC with the loss of contractual rights under the development agreement if plaintiff attempted to obtain public records or attend public meetings of the Board of County Commissioners of Jefferson County, *id.* at 16-18, ¶¶ 51-53; (3) discriminate against plaintiff by failing to provide him with the same fee waivers as other members of the media, *id.* at 18, ¶ 54; (4) make a record of matters discussed at public meetings, *id.*, ¶ 55; (5) negotiate the sale or lease of county

property without giving BJC or plaintiff the opportunity to bid on the purchase of the property, *id.* at 19, ¶ 56; (5) retaliate against witnesses who were willing to testify on behalf of BJC in its state contract action against Jefferson County, *id.* at 20, ¶ 58; (6) illegally purchase commercial aviation property at Jefferson County Airport to compete with BJC, *id.* at 21, ¶ 59; (7) defame BJC and its officers by providing known associates and clients of the company with false information about BJC, *id.* at 21, ¶ 60; (8) violate plaintiff's rights by ordering "close contact" surveillance of plaintiff any time he was in the Jefferson County Courts and Administration Building, *id.* at 23, ¶ 66; (9) bribe the law clerk of the district court judge presiding over BJC's state-court lawsuit to include facts in the judge's written opinion that were not contained in the record, *id.* at 24-26, ¶¶ 68-76; and (10) cause plaintiff to publish libelous information on his website, *id.* at 27, ¶¶ 77-80.

Plaintiff's second cause of action asserted that defendants violated plaintiff's First Amendment rights by making the success of BJC's and Jefferson County's settlement negotiations contingent on plaintiff ceasing all journalistic activities, including filing Open Records Act requests for public information and attending and reporting on political events in Jefferson County.  *Id.* at 29-30, ¶¶ 86, 88-89.  In his final cause of action, plaintiff alleged that defendant Congrove had executed false documents using plaintiff's name in order to obtain a bank loan.  *Id.* at 38-45, ¶¶ 49-98.

Through subsequent amendments to his complaint, plaintiff eliminated the majority of claims and defendants initially involved in the lawsuit.  In the operative complaint, filed on January 25, 2006, plaintiff asserted a § 1983 claim against

defendant Congrove and the Jefferson County Board of County Commissioners for violation of his rights under the First Amendment. Docket No. 89. On May 23, 2008, Judge Matsch granted summary judgment in favor of Jefferson County on plaintiff's municipal liability claim, Docket No. 217, and further narrowed the scope of the lawsuit by granting defendant's pre-trial motion in limine to preclude plaintiff from seeking certain economic damages. *See* Docket No. 273 (granting defendant's motion in limine, Docket No. 263, which sought to preclude plaintiff from presenting evidence at trial regarding damages arising out of failed negotiations over the BJC development deal and U.S. Bank's foreclosure on the deed of trust granted by Ralph and Carmella Aiello). After plaintiff's presentation of his case-in-chief at trial, the court determined that there had been no evidence to support a claim for economic damages related to the loss of plaintiff's radio show. Docket No. 312 at 4; Docket No. 384 at 4. Accordingly, only two issues were submitted to the jury: (1) whether defendant Congrove had violated plaintiff's First Amendment rights; and (2) whether plaintiff was entitled to emotional distress damages. Docket No. 384 at 4. On December 9, 2009, the jury returned a verdict finding that defendant had "used his authority as a Jefferson County Commissioner to take adverse action against Mr. Zinna in violation of the First Amendment" and awarding $1,791.00 in damages. Docket No. 316-1.

Defendant argues that plaintiff's lodestar amount should be reduced to account for plaintiff's partial success in the litigation. As noted above, this argument requires the Court to determine the relationship between plaintiff's successful and unsuccessful claims.

The Court begins by addressing the first and third causes of action asserted in

plaintiff's first amended complaint. Defendant argues that Mr. Paulsen's hours should be reduced to account for the time he spent on these claims. Docket No. 339 at 11-12. "[C]laims are related if they are based on a common core of facts" or "related legal theories." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010) (citing *Jane L.*, 61 F.3d at 1512); *see also Hensley*, 461 U.S. at 434 (claims are unrelated if they are "based on different facts and legal theories). Here, the first and third causes of action advance entirely different legal theories than plaintiff's First Amendment claim against defendant Congrove. However, only the third cause of action is based on an entirely different set of facts – namely defendant's misappropriation of plaintiff's name on financial documents.[12] By contrast, there is some factual overlap between plaintiff's civil conspiracy/RICO claims, which were predicated in part on defendants' interference with plaintiff's journalistic activities, *see* Docket No. 61-1 at 19, ¶ 57 (alleging that defendants conspired "to chill or violate the rights of Plaintiff Zinna by attempting to intimidate . . . Plaintiff Zinna not to publish freely and not to speak freely his thoughts"), and plaintiff's First Amendment claim against defendant Congrove. *See Chavez v. Stomp*, 2014 WL 12796784, at *8 (D.N.M. Feb. 27, 2014) (agreeing with defendants' "concession that the Title VII discrimination and § 1983 claims [were] related for purposes of § 1988, since both counts [were] based on interference with religious freedom"); *Spano v. Simendinger*, 613 F. Supp. 124, 125-26

---

[12]While plaintiff alleged that the acts underlying his third cause of action "were the substantial motivating factor for Defendant James Congrove to insist that the Board of County Commissioners of the County of Jefferson . . . impose prior restraint and impermissible viewpoint discrimination against Plaintiff Zinna," Docket No. 61-1 at 38, ¶ 48, they do not appear to be the factual basis for plaintiff's First Amendment claim.

(S.D.N.Y. 1985) (finding no basis to reduce fee award where, "[a]lthough time was spent investigating a claim of conspiracy and coverup which was dropped prior to trial, this claim also arose out of the same incident and the fruits of such investigation might have been useful in proving the underlying claim"); *see also M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, 822 F.3d 1128, 1138 (10th Cir. 2016) (noting that cases "involving truly unrelated claims . . . are unlikely to arise with great frequency" (internal quotation marks omitted)). Accordingly, only the third cause of action is entirely "unrelated" to plaintiff's successful First Amendment claim under *Hensley*.[13]

Defendant also argues that plaintiff should not recover for the time Mr. Beall spent on plaintiff's unsuccessful claims for economic damages. *See* Docket No. 339 at 13; Docket No. 339-1 at 44-47 (objecting to time entries related to claims spent on economic damages). However, defendant does not assert that the economic damages

---

[13]Defendant suggests that plaintiff's fee award should be limited to those hours spent on matters specifically related to defendant Congrove. The Court disagrees. *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1281 (7th Cir. 1983) (holding that, "when . . . a plaintiff raises a claim for relief that relates to several defendants, not all of whom are held liable, the total time expended on the claim for relief should be counted in awarding the plaintiff attorney's fees so long as the defendants from whom plaintiff did not obtain relief were not named frivolously"); *Bustamante v. Albuquerque Police Dep't*, 1991 WL 125307, at *5 (D.N.M. Apr. 24, 1991) ("As long as the claims are related and not frivolous and the same factual information must be developed, the fact that a plaintiff succeeds against only one of multiple defendants does not require attorney's fees to be apportioned on the basis of a percentage of the defendants against whom plaintiffs were successful; recovery against only one of several defendants still reflects achievement of the basic relief sought and justifies awarding attorney's fees for all time reasonably spent in achieving that result."). Because plaintiff's claims against the other defendants were factually related to plaintiff's claim against defendant Congrove and non-frivolous, *see* Docket No. 319 (denying motions for sanctions on ground that the court was "unable to say that the allegations made against the moving defendants by the plaintiff's previous counsel . . . were frivolous and completely lacking in support"), the time spent litigating those claims is compensable.

plaintiff was seeking were unrelated to the First Amendment violations.  Nor is there any

evidence that Judge Matsch made such a finding in dismissing the damages claims.

*See* Docket No. 263 at 5-6 (quoting court as saying that, "even if there could be a nexus

between the claims that are properly here under 1983 and the collapse of the

negotiations, the ultimate effect was that the county prevailed, so . . . the failure of the

negotiations didn't lead to any loss in the ultimate effect"); Docket No. 312 at 4 (stating

that there had "been no evidence presented to support a claim for economic damages

with respect to the radio show").  The Court therefore finds that plaintiff's claim for

economic damages is "related" to his successful First Amendment claim for purposes of

determining a reasonable fee award.[14]

*Hensley* calls for a different analysis depending on whether an unsuccessful

claim is related or unrelated to the claim on which the plaintiff ultimately prevailed.  If a

claim is unrelated, then "no fee may be awarded for services on [that] claim."  *Hensley*,

461 U.S. at 435.  The Court has concluded that only the third cause of action asserted

in plaintiff's first amended complaint was "unrelated" to plaintiff's successful First

Amendment claim against defendant Congrove.  Accordingly, the Court must determine

how to reduce plaintiff's fee award to account for the time spent on that claim.

Counsel's billing records are not so detailed as to allow a precise determination

of the number of hours spent on the third cause of action.  It also appears that Mr.

Paulsen spent much of his time developing the case as a whole and responding to

---

[14]Defendant does not challenge the hours expended on plaintiff's § 1983 claim
against Jefferson County, which was dismissed on summary judgment.  *See* Docket
No. 217.  Nevertheless, the Court finds that this claim was clearly related to the First
Amendment claim against defendant Congrove on which plaintiff prevailed.

motions that were largely unrelated to that claim.  *See generally* Docket No. 348-1 at

14-26.  Where, as in this case, it is difficult to identify the number of hours expended on

a particular claim, courts have reduced the plaintiff's fee award by a percentage

amount.  *See, e.g.*, *Chavez*, 2014 WL 12796784, at *9 (reducing fee award by 10%

where "there was substantial overlap in testimony and preparation between Plaintiff's

successful and unsuccessful claims"); *Milham v. Perez*, No. 03-cv-00702-MSK-MJW,

2005 WL 1925770, at *4 (D. Colo. Apr. 11, 2005) (applying 50% reduction to fee award

where "counsel's billing records [were] not so granular" as to allow the court to "make a

precise finding as to what times were spent developing what claims"); *see also Hensley*,

461 U.S. at 436-37 (stating that "[t]here is no precise rule or formula" for accounting for

a plaintiff's limited success and giving courts the discretion to "attempt to identify

specific hours that should be eliminated, or . . . simply reduce the award to account for

the limited success").[15]  The Court will follow the same approach here.  Specifically, the

Court will reduce, by twenty-five percent, the total hours expended by Mr. Paulsen prior

to the drafting of the third amended complaint.[16]  The Court finds a twenty-five percent

reduction appropriate because, although the third cause of action represents thirty-

---

[15]One time entry specifically relates, at least in part, to the third cause of action,
*see* Docket No. 348-1 at 14 (April 13, 2005 time entry for 0.9 hours for meeting "with
Zinna to discuss results of legal research concerning civil RICO and conspirators
violations of criminal statutes and *civil cause of action for invading Zinna's privacy for
using his forged signature*" (emphasis added)).  Half of that time – or 0.45 hours – will
therefore be excluded from plaintiff's fee award.

[16]Plaintiff's third amended complaint, filed on January 25, 2006, narrowed the
scope of the litigation to include only plaintiff's municipal liability claim against Jefferson
County and the First Amendment claim against defendant Congrove.  *See* Docket No.
89.

three percent of the total claims asserted in the first amended complaint, that claim, which was only asserted against defendant Congrove in his individual capacity and Does 1-50, Docket No. 61-1 at 54, appears to have generated less work for plaintiff's counsel during the initial stages of the litigation. Indeed, as reflected by plaintiff's subsequent amendment to the pleadings, Docket No. 89, defendant Congrove's alleged appropriation of plaintiff's name on financial documents was not the focus of the litigation.

Mr. Paulsen spent a total of 224.35 hours on the litigation prior to the filing of the third amended complaint. *See* Docket No. 348-1 at 14-26.[17] After applying the twenty-five percent reduction, plaintiff is entitled to compensation for 168.26 hours spent by Mr. Paulsen prior to the filing of the third amended complaint, and a total of 282.01 hours spent on the litigation as a whole.[18]

Defendant also seeks a general, seventy-five percent reduction of the lodestar to account for plaintiff's limited recovery at trial. *See* Docket No. 339 at 4-9, 14-16; *see also Hensley*, 461 U.S. at 434 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"). In determining what effect to give plaintiff's partial success on

---

[17]This number does not include the 0.45 hours that have already been deducted for purposes of the fee award, *see* note 15 *supra*, or the time spent drafting the third amended complaint and accompanying motion.

[18]The Court calculated the 282.01 figure by subtracting twenty-five percent of 224.35 hours – or 56.09 hours – from the 338.1 total hours claimed for Mr. Paulsen in the fee motion. *See* Docket No. 348-1 at 5.

related claims, such as plaintiff's claims for damages, the Court must consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The Court finds that a seventy-five percent reduction of the lodestar is unwarranted. As the Tenth Circuit has already determined, plaintiff's recovery at trial – though low in comparison with the amount he requested – was not merely "technical." *Zinna I*, 680 F.3d at 1242. Moreover, plaintiff succeeded in vindicating his First Amendment rights, which was a central goal of the lawsuit. See *id.* at 1240 (holding it was evident, based on jury's finding that Congrove had "used his authority . . . to take adverse action against Zinna in violation of the First Amendment," that "Zinna succeeded on a significant issue in litigation which achieves some of the benefits he sought in bringing suit" (internal quotation marks omitted); *see also Chavez*, 2014 WL 12796784, at *10 (rejecting defendant's proposed 50% reduction in fee award where plaintiff succeeded on his relatively important First Amendment retaliation claim).

On the other hand, plaintiff's billing records show that counsel spent a number of hours pursuing unsuccessful claims for economic damages and responding to motions by defendants who were dismissed from the lawsuit prior to trial. *See, e.g.*, Docket No. 348-1 at 15-27 (time records showing substantial number of hours spent responding to motions to dismiss and motions for sanctions filed by defendants other than defendant Congrove), 56-58 (time records showing over thirty hours devoted to motion in limine concerning damages). In light of this, the Court finds that the total number of hours expended on the litigation was not reasonable in relation to the results obtained. *See*

*Hensley*, 461 U.S. at 435; *Zinna I*, 680 F.3d at 1242 n.1 (noting that, although the district court's $8,000 fee award was arbitrary, plaintiff was "clearly not entitled to $503,000" in attorney's fees, which included "costs for work related to Zinna's failed damages request and for litigation surrounding claims in which Zinna did not succeed").

Having determined that the number of hours expended on the litigation was unreasonable, the Court has discretion to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. Here, the Court opts for the latter approach and finds that a twenty percent reduction in the lodestar appropriately accounts for plaintiff's lack of success against all of the defendants (except for defendant Congrove) initially named in the lawsuit, as well as for the significant discrepancy between the monetary relief sought, *see* Docket No. 339-1 at 15-17 (asserting millions of dollars in economic damages), and the monetary relief obtained. *See Doe ex rel. Doe v. Keala*, 361 F. Supp. 2d 1171, 1187 (D. Haw. 2005) (reducing lodestar to account for the plaintiff's lack of success against certain defendants and the low damages award which, "[m]easured against the years of litigation, the considerable amount of resources expended on th[e] case, and Plaintiffs' (and their counsels') expectations," represented a "substantial defeat"). While "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised," *Hensley*, 461 U.S. at 440, plaintiff sought a far broader vindication of his First Amendment rights than that which he ultimately obtained. *See Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1178 (10th Cir. 2010) ("A reduced fee award is

22

appropriate if the relief, however, significant, is limited in comparison to the scope of the litigation as a whole." (internal quotation marks and alteration omitted)). Moreover, it is clear from plaintiff's discovery responses that vindicating his First Amendment rights was not his only objective in bringing the lawsuit. He also sought significant monetary relief. *See* Docket No. 339-1 at 15-17 (asserting millions of dollars in economic damages); *see also Jane L.*, 61 F.3d at 1511 (stating that district courts "must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent [a plaintiff's] 'limited success' should effect a reduction in the lodestar"). Because plaintiff achieved only limited success in relation to that goal, a twenty percent reduction of the lodestar is appropriate. *Compare Flitton*, 614 F.3d at 1178 (holding that district court did not abuse its discretion in declining to reduce fee award based on degree of success where, although the plaintiff's ultimate damages award "did not approach the amount of damages she sought, her award of over $350,000 in th[e] Title VII suit was not inconsequential"), *and Chavez*, 2014 WL 12796784, at *9 (finding lesser reduction of ten percent appropriate where the plaintiff "succeeded on a relatively important claim . . . *and* achieved a significant damages award" (emphasis added)), *with Doe ex rel. Doe*, 361 F. Supp. 2d at 1187 (applying a fifty percent reduction to lodestar where "the monetary relief obtained [was] far less than that sought by the plaintiff").

### 3. Calculation of Lodestar

The hours reasonably expended by plaintiff's counsel (before the additional twenty percent reduction for limited success) are as follows: 650.9 hours for Mr. Beall;

106.1 hours for Ms. Kelley; 282.01 hours for Mr. Paulsen; 863.2 attorney hours for Mr. Platt; 11.8 paralegal hours for Mr. Platt; and 1.5 hours for Mr. Zansberg. Docket No. 348-1 at 5.[19] When these amounts are multiplied by the reasonable hourly rates identified above, the resulting lodestar is $457,084.75, or $187,472.50 for Mr. Beall,[20] $10,610.00 for Ms. Kelley, $63,452.25 for Mr. Paulsen, $195,400.00 for Mr. Platt, and $150.00 for Mr. Zansberg. After the twenty percent reduction to account for plaintiff's limited overall success, plaintiff is entitled to a fee award of $365,667.80. The Court finds this to be a reasonable sum in light of the hours expended on the litigation and the results obtained.

## III. MOTION FOR SUBSTITUTION

Defendant separately moves to substitute Jefferson County as defendant in this case pursuant to Fed. R. Civ. P. 25(c). Docket No. 425.[21] In support of the motion, defendant states that Jefferson County has agreed to indemnify her against any judgment entered against her as personal representative of James Congrove's estate. *Id.* at 2. Defendant asserts that "[t]he only reason that the Estate remains open is

---

[19]Although Mr. Beall's summary table does not differentiate between Mr. Platt's attorney hours and paralegal hours, the time records show that Mr. Platt spent 11.8 paralegal hours on the litigation. *See generally* Docket No. 348-1 at 13-80.

[20]Mr. Beall raised his hourly rate from $275 to $290 between December 24, 2007 and January 22, 2008. *See* Docket No. 348-1 at 35-36.

[21]On January 23, 2012, while this case was on appeal to the Tenth Circuit, counsel for defendant James Congrove notified the court that James Congrove had died. Docket No. 383. Plaintiff subsequently moved to substitute Judy Congrove, in her capacity as personal representative of Mr. Congrove's estate, as the defendant-appellee for purposes of the appeal. Docket No. 384 at 13 n.2. The Tenth Circuit granted plaintiff's motion on June 5, 2012. *Id.*

because the Personal Representative is the named defendant in this action" and that, in light of Jefferson County's agreement to indemnify defendant, "there is no reason for the Personal Representative to remain a party."  *Id.*

Federal Rule Civ. P. 25(c)  provides that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

Defendant makes no showing that Jefferson County's agreement to indemnify her in the event of an adverse judgment constitutes a transfer of interest within the meaning of Fed. R. Civ. P. 25(c).  *See In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest."  (internal citation omitted)); *In re Publication Paper Antitrust Litig.*, 2013 WL 3155371, at *3 (D. Conn. June 20, 2013) (denying motion for substitution where third party had agreed only to indemnify defendant, not assume defendant's liability directly).  Nor does the Court perceive any reason to substitute Jefferson County as a defendant at this stage of the litigation. Defendant states that James Congrove's estate remains open only because the Personal Representative is named as a defendant.  However, given the Court's ruling on plaintiff's motion for attorney's fees above, there are no issues left to be resolved in this case.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Award of Reasonable Attorney's Fees and Non-Taxable Costs [Docket No. 326] is **GRANTED** in part and **DENIED** in part as stated in this order.  It is further

**ORDERED** that plaintiff is awarded $365,667.80 in trial attorney's fees.  It is further

**ORDERED** that Defendant Estate of James Congrove's Request for Ruling on Plaintiff's Motion for Attorney Fees [Docket No. 424] is **DENIED** as moot.  It is further

**ORDERED** that defendant's Motion to Substitute Jefferson County as Defendant [Docket No. 425] is **DENIED**.

DATED March 18, 2019.

BY THE COURT:


 s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
Chief United States District Judge